http://www.va.gov/vetapp16/Files4/1630436.txt

Citation Nr: 1630436 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 12-16 162 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO)
 in St. Petersburg, Florida

THE ISSUES

1. Entitlement to an effective date earlier than November 6, 2007 for the grant of service connection for posttraumatic stress disorder (PTSD). 

2. Entitlement to initial disability rating in excess of 30 percent for the service-connected PTSD from November 6, 2007. 

WITNESS AT HEARING ON APPEAL

Appellant

ATTORNEY FOR THE BOARD

A. Tenney, Associate Counsel 

INTRODUCTION

The Veteran had active service from August 1962 to July 1984. The Veteran died in December 2008. In November 2007, during his life, the Veteran, in pertinent part, filed a claim for service connection for PTSD. In a July 2008 rating decision, in pertinent part, the RO granted service connection for PTSD, assigning an initial 30 percent disability rating. The Veteran died in December 2008. The appellant, the Veteran's surviving spouse, filed a timely request to be substituted in the Veteran's appeal, as well as a timely notice of disagreement as to effective date and initial rating issues on appeal; therefore, the appellant is substituted in the Veteran's appeal, which includes the procedural aspects of the claim. See April 2010 notice of disagreement; see also 38 U.S.C.A. § 5121A (West 2014) (allowing for substitution in case of death of a claimant who dies on or after October 10, 2008); 38 C.F.R. § 3.1010(a) (2015). 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision by the RO in St. Petersburg, Florida. In the May 2012 substantive appeal, the appellant expressly limited the appeal to the issues of an earlier effective date for the grant of service connection for PTSD and an initial disability rating in excess of 30 percent for PTSD. 

This case was previously before the Board in November 2014, where the Board remanded the issues on appeal for a Board hearing. A June 2016 Board videoconference hearing was held before the undersigned Veterans Law Judge. See June 2016 Board hearing transcript. As such, an additional remand to comply with the June 2016 directives is not required. Stegall v. West, 11 Vet. App. 268 (1998).

Regarding the June 2016 Board videoconference hearing, when conducting a hearing, a Veterans Law Judge must suggest that a claimant submit evidence on any issue material to substantiating a claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record. Bryant v. Shinseki, 23 Vet. App. 488, 496-97 (2010); 
38 C.F.R. § 3.103 (2015). The Veterans Law Judge also must suggest the submission of evidence when testimony during the hearing indicates that it exists (or could be reduced to writing) but is not of record. Bryant, 23 Vet. App. at 497. 

In this case, during the videoconference Board hearing, the Veterans Law Judge specifically noted the issues on appeal, and sought to identify any pertinent evidence not currently associated with the record that might have been overlooked or was outstanding that might substantiate the claims. Specifically, the Veterans Law Judge asked for evidence that might be used to substantiate the issues on appeal. The Veterans Law Judge informed the appellant specifically regarding the need for evidence pertinent to the social and/or occupational impairment of the service-connected PTSD, including a specific symptom that appeared to be in the 70 percent rating criteria, about claims the Veteran may have submitted with VA prior to November 6, 2007, dates of treatment and diagnosis, and possible explanations as to why the November 2007 claim might have been a refiling of a previous claim rather than the original claim; therefore, the Veterans Law Judge substantially complied with the requirements of 38 C.F.R. § 3.103; Bryant at 496-97.

FINDINGS OF FACT

1. The Veteran died in December 2008; the appellant is the Veteran's surviving spouse, who was substituted as the claimant to continue the Veteran's pending claim and appeal to completion.

2. The Veteran's formal claim for service connection for PTSD was received by VA on November 6, 2007. 

3. No claim for service connection for PTSD was received prior to November 6, 2007. 

3. For the entire initial rating period on appeal from November 6, 2007, the service-connected PTSD has more nearly approximated occupational and social impairment with deficiencies in most areas due to such symptoms as: chronic sleep impairment, intrusive thoughts, exaggerated startle response, hypervigilance and impaired impulse control resulting in unprovoked irritability with periods of violence. 

4. For the entire initial rating period on appeal from November 6, 2007, the service-connected PTSD was not characterized by total occupational and social impairment. 

CONCLUSIONS OF LAW

1. The criteria for an effective date prior to November 6, 2007 for the award of service connection for PTSD have not been met. 38 U.S.C.A. §§ 5103A, 
5107, 5110 (West 2014); 38 C.F.R. §§ 3.102, 3.155, 3.159, 3.326(a), 3.400 (2015).

2. Resolving reasonable doubt in favor of the appellant, the criteria for an initial rating of 70 percent for PTSD have been met for the entire rating period from November 6, 2007. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107, 5121A, 
7105 (West 2014); 38 C.F.R. §§ 3.1010, 4.3, 4.7, 4.130, Diagnostic Code 9411 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist 

The Veterans Claims Assistance Act of 2000 (VCAA) and implementing regulations impose obligations on VA to provide claimants with notice and assistance. 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.326(a) (2015). 

With respect to the appeal for an earlier effective date, resolution of this issue turns on the law as applied to the undisputed facts regarding the date of receipt of claim and date entitlement arose. As the effective date issue turns on a matter of law, further assistance, such as the further procurement of records, would not assist with the appealed issue. Consequently, no further notice or development under the VCAA is warranted. See Mason v. Principi, 16 Vet. App. 129, 132 (2002).

As the rating issue on appeal arises from the substituted appellant's disagreement with the initial rating and effective date following the grant of service connection, no additional notice is required regarding this downstream element of the service connection claim. The United States Court of Appeals for the Federal Circuit (Federal Circuit) and the United States Court of Appeals for Veterans Claims (Court) have similarly held that regarding the downstream element of the initial rating that, once service connection is granted the claim is substantiated, additional notice is not required, and any defect in notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007) (noting that, once an initial VA decision awarding service connection and assigning a disability rating and effective date has been made, 38 U.S.C.A § 5103(a) notice is no longer required); 38 C.F.R. § 3159(b)(2) (no VCAA notice required because of filing of NOD).

Regarding the duty to assist in this case, the Veteran received a VA mental health examination in July 2008. The examination report is of record. To that end, when VA undertakes to either provide an examination or to obtain an opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson,21 Vet. App. 303, 312 (2007). The VA examination report reflects that the VA examiner reviewed the record, conducted an in-person examination, and rendered the requested opinions and rationale, including as to occupational and functional impairment. 

All relevant documentation, including VA treatment records, has been secured and all relevant facts have been developed. There remains no question as to the substantial completeness of the issues on appeal. 38 U.S.C.A. §§ 5103, 5103A, 5107; 38 C.F.R §§ 3.102, 3.159, 3.326(a). Any duties imposed on VA, including the duties to assist and to provide notification, have been met as set forth above.

Earlier Effective Date for Service Connection for PTSD

An award of direct service connection will be effective on the day following separation from active military service or the date on which entitlement arose if the claim is received within one year of separation from service. Otherwise, except as specifically provided, the effective date of an evaluation and award for pension, compensation, or dependency and indemnity compensation based on an original claim, a claim reopened after a final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is the later. 38 U.S.C.A. § 5110(a); 38 C.F.R. § 3.400. 

A "claim" is defined as a formal or informal communication, in writing, requesting a determination of entitlement, or evidencing a belief in entitlement to a benefit and VA is required to identify and act on informal claims for benefits. 38 C.F.R. 
§§ 3.1(p), 3.155(a) (2015); see also Servello v. Derwinski, 3 Vet. App. 196, 
198-200 (1992). Pursuant to 38 C.F.R. § 3.155, any communication or action indicating intent to apply for one or more VA benefits, including statements from a veteran's duly authorized representative, may be considered an informal claim. Such an informal claim must identify the benefit sought. 38 C.F.R. § 3.1(p) defines application as a formal or informal communication in writing requesting a determination of entitlement or evidencing a belief in entitlement to a benefit. See also Rodriguez v. West, 189 F.3d. 1351 (Fed. Cir. 1999). The date of receipt of a claim is the date on which a claim, information, or evidence is received by VA
38 C.F.R. § 3.1(r) (2015).

The appellant asserts that the RO should have assigned an earlier effective date than November 6, 2007 for the grant of service connection for PTSD. Specifically, at the June 2016 Board hearing, the appellant testified that the Veteran filed a formal claim for service connection for PTSD in 1994 or 1995. See June 2016 Board hearing transcript. 

The Veteran submitted an original claim for service connection in November 2007 that was received by VA on November 6, 2007. The claim was granted by the RO in a July 2009 rating decision. 

The Board finds that there was no correspondence received by VA prior to November 6, 2007 that can be construed as an informal claim for service connection for PTSD. While the appellant contends the Veteran filed a claim for service connection for PTSD in 1994 or 19995, an August 1994 claim reflects the Veteran specifically requested service connection for pneumonia, eosinophilia, cellulitis, shrapnel in right arm, neck, face, and back, residuals of a right knee disorder, a right shoulder disorder, an eye disorder, and an ear drum disorder only. Such evidence reflects that the Veteran did not have the intent to apply for service connection for PTSD on the date and made the conscious choice not to apply for benefits for PTSD in August 1994. See August 1994 claim (reflecting a request for service connection for various disorders, excluding PTSD). As such, the evidence, both lay and medical, does not establish a date of claim that is earlier than the date VA received the claim in November 2007. 

The pertinent legal authority governing effective dates is clear and specific, and the Board is bound by such authority. In this case, the Veteran separated from active service July 1984, did not file a claim for service connection within one year of service separation, and he first filed an original claim for service connection for PTSD on November 6, 2007. On these facts, because the earliest effective date legally possible has been assigned, and no effective date for the award of service connection earlier than November 6, 2007 is assignable, the appeal for an earlier effective date is without legal merit and must be denied. See Sabonis v. Brown, 
6 Vet. App. 426, 430 (1994). For these reasons, the Board finds that an effective date prior to November 6, 2007 for the award of service connection for PTSD is not warranted. 

Higher Initial Rating for PTSD

Disability ratings are determined by applying a schedule of ratings that is based on average impairment of earning capacity. Separate diagnostic codes identify the various disabilities. 38 U.S.C.A. § 1155; 38 C.F.R., Part 4 (2015). Each disability must be viewed in relation to its history and the limitation of activity imposed by the disabling condition should be emphasized. 38 C.F.R. § 4.1 (2015). 

Examination reports are to be interpreted in light of the whole recorded history, and each disability must be considered from the point of view of the veteran working or seeking work. 38 C.F.R. § 4.2 (2015). Where there is a question as to which of two disability ratings shall be applied, the higher rating is to be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating is to be assigned. 38 C.F.R. § 4.7. When, after careful consideration of the evidence, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3.

PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411. Pertinent in this case, the General Rating Formula provides that a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped, speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. 38 C.F.R 
§ 4.130. 

A 70 percent rating will be assigned for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of 
personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. The criteria for a 70 percent rating are met if there are deficiencies in most of the areas of work, school, family relations, judgment, thinking, and mood. Bowling v. Principi, 15 Vet. App. 1, 11-14 (2001).

A 100 percent schedular rating contemplates total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. 38 C.F.R. § 4.130. 

The use of the term "such as" in the General Rating Formula for Mental Disorders in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). It is not required to find the presence of all, most, or even some, of the enumerated symptoms recited for particular ratings. Id. The use of the phrase "such symptoms as," followed by a list of examples, provides guidance as to the severity of the symptoms contemplated for each rating, in addition to permitting consideration of other symptoms particular to each veteran and disorder, and the effect of those symptoms on his/her social and work situation. 

In Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117 (2013), the Federal Circuit held that VA "intended the General Rating Formula to provide a regulatory framework for placing veterans on a disability spectrum based upon their objectively observable symptoms." The Federal Circuit stated that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." It was further noted that "§ 4.130 requires not only the presence of certain symptoms but also that those symptoms have caused occupational and social impairment in most of the referenced areas."

In assessing the evidence of record, it is important to note that the Global Assessment of Functioning (GAF) score is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental 
health-illness." Richard v. Brown, 9 Vet. App. 266, 267 (1996) (citing DSM-IV at 32).

A GAF score of 21 - 30 indicates "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)." 

A GAF score of 31 - 40 indicates "Some impairment in reality testing or communication (e.g. speech is at times illogical, obscure or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." 

A GAF score of 41-50 indicates "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." 

A GAF score of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning, (e.g., few friends, conflicts with peers or
 co-workers)."

A GAF score of 61-70 indicates "Mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."

The GAF score and interpretations of the score are important considerations in rating a psychiatric disability. See Richard, 9 Vet. App at 267; Carpenter v. Brown 8 Vet. App. 240, 243 (1995). However, the GAF score assigned in a case, like an examiner's assessment of the severity of a condition, is not dispositive of the rating issue. The GAF score must be considered in light of the actual symptoms of a veteran's disorder as they reflect on the degree of occupational and social impairment, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126 (a) (2015). 

The appellant contends generally that the service-connected PTSD has been manifested by more severe symptoms and impairment than contemplated by the 
30 percent initial disability rating assigned from November 6, 2007. At the June 2016 Board hearing, the appellant testified that the Veteran's PTSD manifested as impaired impulse control resulting in unprovoked irritability with periods of violence, including pushing her into a wall, which resulted in a head injury. 

A February 2007 private treatment record reflects a private examiner assessed PTSD. A September 2007 private treatment record reflects a depressed mood. 

March 2007 VA treatment records reflect the Veteran reported nightmares, efforts to avoid certain situations, feelings of detachment from others, and denied suicidal or homicidal ideations, or feeling constantly on guard, watchful, or easily started. 

August 2007 VA treatment records reflect the Veteran reported feeling detached from others, irritability, exaggerated startle response, sleep disturbance, and hypervigilance. The August 2007 VA examiner assessed orientation in all four spheres, regular speech, and an euthymic mood. GAF scores of 60 and 65 were assigned. 

An August 2007 addendum reflects the August 2007 VA examiner received a letter from the surviving spouse reflecting the surviving spouse feared for her safety when the Veteran was inebriated. The August 2007 VA examiner wrote that the surviving spouse's letter "summarizes unpredictable behavior as well as aggressive behavior."

A July 2008 VA examination report reflects the Veteran reported a history of violence and assaultiveness, chronic sleep impairment, irritability, anger, and difficulty concentrating, and denied panic attacks, delusions, hallucinations, and suicidal or homicidal ideations. The July 2008 VA examiner assessed a normal affect, orientation to person, time, and place, appropriate behavior, recurrent and intrusive distressing recollections, efforts to avoid thoughts, feelings, or conversations, hypervigilance, exaggerated startle response, and significant distress or impairment in social or occupational functioning. The July 2008 VA examiner diagnosed PTSD and assigned a GAF score of 60. 

At the June 2016 Board hearing, the appellant testified as to sustaining a head injury after the Veteran pushed her into a wall, that the Veteran had slapped her on a separate occasion, and that the Veteran had a history of altercations with fellow members of the Veterans of Foreign Wars (VFW). See June 2016 Board hearing transcript. 

After a review of the lay and medical evidence, the Board finds that, for the initial rating period on appeal from November 6, 2007 (until the Veteran's death in December 2008), the severity of the Veteran's PTSD more nearly approximates a rating based on occupational and social impairment, with deficiencies in most areas, as described for a higher 70 percent rating under Diagnostic Code 9411. The Board finds that for this period the service-connected PTSD has resulted in occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to service-connected PTSD symptoms including chronic sleep impairment, intrusive thoughts, exaggerated startle response, hypervigilance, and impaired impulse control resulting in unprovoked irritability with periods of violence. 

The evidence of record shows that, from November 6, 2007 until the Veteran's death in December 2008, the Veteran's PTSD manifested as exaggerated startle response, hypervigilance, and impaired impulse control resulting in unprovoked irritability with periods of violence that indicates occupational and social impairment in most areas due to PTSD symptomatology. The July 2008 VA examination report reflects the Veteran reported a history of violence and assaultiveness, and the July 2008 VA examiner opined that symptoms of PTSD manifested as significant distress or impairment in social or occupational functioning. Further, at the June 2016 Board hearing, the appellant testified as to sustaining a head injury after the Veteran pushed her into a wall, that the Veteran had slapped her on a separate occasion, and that the Veteran had various altercations with fellow members of the VFW. Accordingly, after resolving all reasonable doubt in favor of the appellant, the Board finds that for the rating period from November 6, 2007, the severity of the Veteran's occupational and social impairment and symptoms due to service-connected PTSD more nearly approximates the criteria a higher 70 percent disability rating. See 38 U.S.C.A. 
§ 5107(b); 38 C.F.R. §§ 4.3, 4.7. 

The Board also finds that, for the rating period on appeal from November 6, 2007 to December 2008, the levels of occupational and social impairment due to PTSD symptoms have not met or more nearly approximated the criteria for a higher 
100 percent disability rating. See 38 C.F.R. § 4.130. For the entire rating period on appeal from November 6, 2007 to December 2008, the record does not indicate total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication, persistent delusions, grossly inappropriate behavior, persistent danger of hurting self or others, intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene), disorientation to time or place, memory loss for names of close relatives, own occupation, or own name, as required for a 100 percent disability rating under Diagnostic Code 9411. Specifically, a review of the relevant lay and medical evidence, including the VA and private treatment records, the July 2008 VA examination report, and the June 2016 Board hearing transcript, does not show that the Veteran has experienced total occupational and social impairment. 

Extraschedular Consideration

The Board has also evaluated whether the PTSD rating issue should be referred for consideration of an extraschedular rating under 38 C.F.R. § 3.321(b)(1) (2015). Ratings shall be based as far as practicable, upon the average impairments of earning capacity with the additional proviso that the Secretary shall from time to time readjust this schedule of ratings in accordance with experience. To accord justice, therefore, to the exceptional case where the schedular ratings are found to be inadequate, the Under Secretary for Benefits or the Director, Compensation and Pension Service, upon field station submission, is authorized to approve on the basis of the criteria set forth in this paragraph an extraschedular rating commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities. The governing norm in these exceptional cases is: A finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. 38 C.F.R. § 3.321(b)(1).
 
The Court has clarified that there is a three-step inquiry for determining whether a veteran is entitled to an extra-schedular rating. Initially, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular ratings for the service-connected disability are inadequate. Second, if the schedular rating does not contemplate the veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. Thun v. Peake, 22 Vet. App. 111 (2008). 

With respect to the first prong of Thun, the evidence in this instant appeal does not establish such an exceptional disability picture as to render the schedular rating criteria inadequate. A comparison between the level of severity and symptomatology of the Veteran's PTSD with the schedular rating criteria found in 38 C.F.R. § 4.130, Diagnostic Code 9411, reflects that the diagnostic criteria reasonably describe the Veteran's disability level (social and occupational impairment) and symptomatology. The diagnostic criteria convey that compensable ratings will be assigned for PTSD that manifests by various levels of occupational and social impairment. The Veteran's disability picture has been shown to 
encompass occupational and social impairment symptoms that fall within the diagnostic criteria for a 70 percent rating for the initial rating period on appeal from November 6, 2007. From November 6, 2007 to the Veteran's death in December 2008, the service-connected PTSD was productive of no more than occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to service-connected PTSD symptoms including chronic sleep impairment, intrusive thoughts, exaggerated startle response, hypervigilance, and impaired impulse control resulting in unprovoked irritability with periods of violence, and GAF scores of 60 and 65. 

All the impairment and symptoms are either explicitly part of the schedular rating criteria or are "like or similar to" examples or symptoms in the schedular rating criteria. Mauerhan at 443. The GAF scores, which are incorporated into the schedular rating criteria as part of the DSM-IV, assess the degree of overall occupational and social impairment. The evidence in this case includes GAF scores of 60 and 65, which reflect an overall assessment of severity of symptoms or degree of occupational and social impairment, which is relevant to the degree of occupational and social impairment upon which PTSD is rated. For these reasons, the Veteran's service-connected PTSD has not been shown to be productive of an exceptional disability picture; therefore, the Board determines that referral of this case for extra-schedular consideration pursuant to 38 C.F.R. § 3.321(b)(1) is not merited.

Under Johnson v. McDonald 762 F.3d 1362 (Fed. Cir. 2014), a veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. In this case, the Veteran has not asserted, and the evidence of record has not suggested, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. In this case, there is neither allegation nor indication that 
the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. 

Finally, in adjudicating the current appeal for a higher rating, the Board has not overlooked the Court's holding in Rice v. Shinseki, 22 Vet. App. 447 (2009), which held that a claim for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU) may be part of an a rating issue when the TDIU claim is either expressly raised by a veteran or reasonably suggested by the record. In this case, as distinguished from the facts in Rice, at the July 2008 VA 

examination the Veteran reported retiring due to age in 2007. Thus, the Board finds that Rice is inapplicable because neither the Veteran, appellant, nor the evidence suggests unemployability due to the service-connected disabilities. 

ORDER

An earlier effective date than November 6, 2007 for the grant of service connection for PTSD is denied.

An initial disability rating of 70 percent for PTSD from November 6, 2007 is granted. 

____________________________________________
J. PARKER
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs